## Redington *v.* Chase.

Where one of two tenants in common of a quantity of "shot iron," took possession of all of the iron, and mixed it with other iron, and manufactured the mixture into various iron wares, so that the common property could no longer be traced or identified, and afterward sold or disposed of these wares ;— *Held*, that these acts amounted to a conversion of the share of his co-tenant.

This action was committed to an auditor, who, by consent of the parties, reported the following statement of facts :

"In the spring of 1856 E. B. Parker, J. M. Spooner, and the firm of H. C. Redington & Co., plaintiffs in this action, bid off, at a sheriff's sale in Franconia, on their joint account, a quantity of shot iron, at $2 per ton. The iron was subsequently weighed off to the parties by a servant of the sheriff, who reported the weight of the iron to be 58,061 lbs., or twenty-nine tons and 61 lbs., and the said parties paid the sheriff for that quantity at the aforesaid price, paying one third each. Parker and Spooner afterward sold each his one third of the iron to one Wilcomb, who sold the same two thirds to the defendants. The quantity of iron which Parker and Spooner assumed to sell to Wilcomb was two thirds of 29 tons and 61 pounds, as was stated in the verbal contract of sale, and Wilcomb assumed to sell to the defendants the same quantity, to wit, two thirds of 29 tons and 61 pounds.

The fact of the sale to the defendants was made known to the plaintiffs, who assented that the defendants might draw away two thirds of the iron, but requested them to leave one third of an average quality. The defendants drew away, between July 1st and December 1st of that year, 1856, 37,730 pounds of the iron, and no more, that quantity being all which they found there.

The plaintiffs never had any part of the iron, and there was no evidence introduced by either party tending to show that any part of the iron had been taken by any body except by the defendants, as above stated.

At the time of the aforesaid sales, and until the drawing away of the iron was nearly completed, it was supposed by all parties that the whole quantity of iron was 29 tons and 61 pounds.

No division of the iron between the several owners was ever made.

When the defendants' teamster, one Rowland, went to draw away the iron, said Parker, who lived in the immediate vicinity, showed him the iron and gave him some directions as to the place or places from which he should take it, and in the course of the drawing told Rowland that the defendants were to have two thirds of 29 tons and 61 pounds, as he, Parker, had understood from Wilcomb. When Rowland found that the whole quantity of iron was less than two thirds of 29 tons and 61 pounds, he reported the fact to Parker, who said, " You will have to take the whole of it, then ; " and Rowland did so. It did not appear that Parker had any authority whatever from the plaintiffs to give such directions, or any directions, and his action in that particular was never subsequently sanctioned or ratified by the plaintiffs.

On the 31st day of December, 1856, Wilcomb paid to Parker and Spooner a small balance then due them, and took their receipt for the same, "in full for 37,730 pounds of shot iron."

The shot iron so taken by the defendants was applied by them to the only use, so far as appeared, to which it is ever applied, namely, it was mixed with other iron, and the mixture manufactured into various kinds of iron ware, so that the shot iron could not in any manner be identified or traced. The articles so manufactured were sold or disposed of prior to October, 1857.

Before the commencement of this suit the plaintiffs called upon the defendants several times, and requested them to account to the plaintiffs for the plaintiffs' share of the shot iron, which the defendants refused to do, claiming that they had taken no more in quantity than they bought of Wilcomb, and denying any liability to account to the plaintiffs, in any form, for any portion of said shot iron.

If, upon the foregoing facts, there was a conversion of any part of the iron by the defendants, I find the defendants guilty, and assess damages in the sum of seventy dollars forty-two cents ($70.42), upon which sum interest is to be cast from the date of the writ. If there was no conversion, I find the defendants not guilty."

The questions of law arising upon the foregoing auditor's report were reserved to the law term of the court.

*Farr*, for the plaintiffs.

*Hibbard*, for the defendants, cited *Benton* v. *Benton*, 27 Vt. 93; *Sanborn* v. *Merrill*, 15 Vt. 700; *Smith* v. *Stokes*, 1 East 363; Comp. Stat. 459, sec. 5; *Roberts* v. *Cram*, 11 N. H. 266; *Odiorne* v. *Lyford*, 9 N. H. 502; *White* v. *Phelps*, 12 N. H. 382; *Carr* v. *Dodge*, 40 N. H. 403; *McCrombie* v. *Davis*, 6 East 538; 1 Chit. Pl. 90, 177; *St. John* v. *Standing*, 2 Johns. 468; Litt., sec. 323; *Heath* v. *Hibbard*, 4 East 110; *Holding* v. *Camsell*, 1 T. R. 658; Co. Litt. 200, a; *Bernardston* v. *Chapman*, Bull. N. P. 34; *Jones* v. *Brown*, 38 E. L. & E. 304; *Allen* v. *Woodward*, 28 N. H. 506; *Kimball* v. *Wilson*, 3 N. H. 96; *Wilson* v. *Gamble*, 9 N. H. 74; *Goodwin* v. *Richardson*, 11 Mass. 469; *Martin* v. *Knollys*, 8 T. R. 145; *Gorham* v. *Stearns*, 1 Met. 366.

BARTLETT, J.   The plaintiffs owned an undivided third part of the shot iron. The whole was taken by the defendants, who had purchased the other two thirds, and by them mixed with other iron, and manufactured into various kinds of wares, so that the shot iron could no longer be traced or identified; and these wares were sold or disposed of by the defendants. We think these acts of the defendants placed the common property as completely beyond the plaintiffs' reach, as the destruction of it would. The case differs from *Fennings* v. *Grenville*, 1 Taunt. 241, where the extraction of the oil from the whale was in fact a preservation of the common property. There the chattel was turned to its common and profitable use—to the only use ultimately intended or valuable—and although

the form was altered, the change would not prevent the other tenant from taking and using it, and without this change the common property must have been lost. But here was a conversion of the entire property to the defendants' use, made under circumstances from which no authority could be implied, and of such a nature that the plaintiffs could not afterward take or use the property.

It would, therefore, be unnecessary to inquire whether a sale of the entire property by one tenant in common is a conversion, if that were an open question in this State. *White* v. *Brooks*, 43 N. H. 402.

We are of opinion that there was a conversion of the plaintiffs' share of the iron, and there must be judgment for the plaintiffs on the report.